IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ERIC RYAN,                                    :         Case No. 1:14 CV 0670

      Petitioner,                          :

vs.                                           :

ALAN LAZAROFF, WARDEN,                        :
                                                       **MAGISTRATE'S REPORT AND**
                                              :        **RECOMMENDATION**

      Respondent.

## I. INTRODUCTION.

Pursuant to 72.2(b)(2) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES, this case was automatically referred to the undersigned Magistrate Judge for report and recommendation.  Pending is the Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254 (Docket No. 1).  Respondent filed its Return of Writ (Docket No. 6) and Supplement (Docket No. 7).  Petitioner did not file a Traverse.  For the reasons that follow, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus.

## II. SUMMARY OF FACTS

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  *Duncan v. Sheldon*, 2014 WL 185882, *3 (N.D.Ohio 2014) (*citing* 28 U.S.C. § 2254(e)(1); *see also Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir.2013) *cert. denied*, 134 S.Ct. 693 (2013)).  The habeas applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  *Id.*

Here, the state appellate court summarized the facts underlying Petitioner's convictions as follow:

{¶ 2}  This case arises out of a shooting that occurred in the evening hours of April 6, 2010, in front of an apartment building located at 10322 East 105th Street in Cleveland, Ohio.  On that night, Lashell Caldwell, Jacob Cody, Kevin Shields and Mark Morris were sitting on the stoop outside of the apartment building.  Caldwell and Shields were residents of the apartment building and Cody and Mark were friends of Shields and were visiting that night.  Caldwell and Cody were seated to the left of the front entrance, with Cody seated closest to the apartment entrance.  Shields and Morris were seated to the right of the front entrance.  Caldwell later testified that the area was well lit, with two lights above the apartment building entrance and a streetlight across the street.

{¶ 3}  As the four individuals were sitting outside, Petitioner and an unknown male approached from East 103rd Street.  When Petitioner was in front of the group, he pulled out a semiautomatic handgun from his waistband, pointed the gun in their direction and stated, "this is how I do it." Caldwell stated that Petitioner was fairly close to her face and she stated that when he spoke, she saw that he was missing his left, front tooth.

{¶ 4}  Cody stood and attempted to run inside the apartment building.  As he fled into the building, Petitioner fired two shots at Cody and then walked back to the group.  Caldwell stated that the first shot was fired directly in front of her, that Cody made it inside the apartment building but Petitioner followed him in, firing a second shot.  Shields stated that as Petitioner shot Cody, the unidentified male took Morris' watch and shorts.  Shields stated that before they left the crime scene, Petitioner stated "we don't play no games."  The two men then left the area.

{¶ 5}  Both Shields and Caldwell described Petitioner as missing his front, left tooth and that he was a dark-skinned black male, approximately 5'10? and 190 pounds.

-2-

{¶ 6}  Police officers and EMS technicians arrived on the scene.  They found Cody lying on his back inside the doorway of the apartment building.  EMS transported Cody to Huron Road Hospital, where he was pronounced dead.  Police officers took statements from the remaining witnesses and later, prepared a photo array, which included Petitioner, a man that matched the description given by Shields and Caldwell.  Both Shields and Caldwell picked Petitioner from the array as the shooter.  *State v. Ryan*, 2012 WL 6082901, *1 (2012)

### III. PROCEDURAL BACKGROUND.

#### A.  *Indictment and Conviction*.

During the term of January 2010, the Cuyahoga County Grand Jury indicted Petitioner on the following charges:

1. One count of aggravated murder with felony murder, notice of prior conviction, repeat violent offender and one- and three-year firearm specifications.
2. Five counts of aggravated robbery with notice of prior conviction, repeat violent offender and one- and three-year firearm specifications.
3. Three counts of kidnaping with notice of prior conviction, repeat violent offender and one-and three-year firearm specifications.
4. One count of having weapons under disability with one- and three-year firearm specifications (Docket No.6-1, pp. 6-16 of 231).

The State dismissed the felony murder specifications prior to the first trial and Petitioner elected to have charges of having a weapon under disability, notice of prior conviction and repeat violent offender charges tried to the bench.  During the first trial, the court granted defense counsel's motion for a mistrial.  At the conclusion of Plaintiff's second trial, the jury was unable to reach a unanimous verdict and the court declared a mistrial as to Counts 1-9.  As to Count 10, the court found Petitioner guilty of having a weapon under a disability and the attached firearm specification.  Petitioner was sentenced to five years in prison (Docket No. 6, p. 5 of 26; Docket No. 6-1, p. 52 of 231; Docket No. 7-2).

-3-

Prior to his third trial, Petitioner request that a different judge be assigned to his case was denied.  Petitioner waived his right to a jury trial as to notice of prior conviction and repeat violent offender specification in Counts 1-9.  Following trial, the jury found Petitioner guilty of aggravated murder and the attached firearm specifications as charged in Count 1 of the Indictment, aggravated robbery and the attached firearm specification as charged in Counts 2, 3 and 5 of the Indictment and kidnaping and the attached firearm specification as charged in Counts 4, 6 and 8 of the Indictment.  The court found Petitioner guilty of the notice of prior conviction and repeat violent offender specifications in Counts 1-6 and 8.  The jury found Petitioner not guilty on aggravated robbery and the attached firearm specifications in Counts 7 and 9 of the Indictment (Docket No. 6-1, p. 61 of 231; Docket No. 7-4, pp. 6-8 of 458).

The court imposed an aggregate sentence of 23 years and the sentence was ordered to run concurrently with the sentence imposed for Count 10 and in the case designated as CR 10-536369[1] (Docket No. 6-1, pp. 53, 63-64 of 231; *State v. Ryan, supra*, 2012 WL 6082901 at *2).

**B.      *Direct Appeal*.**

Petitioner filed a notice of appeal in the Court of Appeals of Cuyahoga County, Ohio, on March 15, 2012 (Docket No. 6-1, p. 65 of 231).  In his brief on the merits, Petitioner asserted six assignments of error:

1.     The trial court erred in denying Petitioner's motion to suppress identification testimony.
2.     The trial court abused its discretion by admitting photo spreads over defense counsel's objection.

---

[1]

In case number CR 10-536369, Petitioner was indicted on one count of kidnaping; one count of robbery; two counts of carrying a concealed weapon (CCW); two counts of having weapons while under a disability; two counts of drug possession; two counts of trafficking; and one count of possessing criminal tools.  One count of kidnaping, one count of the CCW and one count of having weapons while under disability were *nollied*.  Petitioner plead guilty to all other offenses.

3.      The manifest weight of the evidence did not support Petitioner's convictions.

4.      The state presented insufficient evidence to support Petitioner's convictions.

5.      The trial court acted contrary to the law when it imposed consecutive sentences without authority to do so under the OHIO REVISED CODE.

6.      The state committed prosecutorial misconduct by improper comments during closing argument (Docket No. 6-1, p. 69 of 231).

On December 6, 2012, the court of appeals affirmed the judgment of the trial court and made the following determinations:

### ASSIGNMENTS OF ERROR 1 AND 2.

Viewing the evidence in a light most favorable to the State, there was sufficient evidence to identify Petitioner as the person who committed the crimes.  Witnesses identified Petitioner from a valid photo array and the identification was reliable.  There was no merit to Petitioner's argument that the physical evidence did not support the conclusion that Petitioner was the shooter (Docket No. 6-1, p. 151 of 231, ¶36-38).

### ASSIGNMENTS OF ERROR 3 AND 4.

The court could not say that the trier of fact lost its way and created a manifest miscarriage of justice sufficient to reverse the conviction and remand for a new trial (Docket No. 6-1, pp. 152-153 of 231, ¶s 41-42).

### ASSIGNMENT OF ERROR 5.

Petitioner raised this issue in a previous appeal and the court found no reason to divert from that authority (Docket No. 6-1, p. 153 of 231, ¶s 43-44 of 231).

### ASSIGNMENT OF ERROR 6.

Review of the prosecutor's closing argument in its entirety discloses no prejudice to any of Petitioner's substantial rights.  Rather, Petitioner took several statements out of context during the prosecutor's closing argument and the claim that the prosecutor gave personal approval to its eyewitness is unfounded (Docket No. 6-1, pp. 153-155 of 231, ¶s 45-50).

C.      *Appeal to the Supreme Court of Ohio.*

Petitioner filed a notice of appeal and memorandum in support of jurisdiction on January 18, 2013 (Docket No. 6-1, pp. 157-175 of 231).  Petitioner posited three propositions of law:

-5-

### PROPOSITION OF LAW I.

The trial court erred and abused its discretion by denying Petitioner's motion to suppress identification testimony and by admitting photo spreads over defense counsel's objection, violating Petitioner's constitutional right to Due Process and a fair trial (Docket No. 6-1, p. 167 of 231).

### PROPOSITION OF LAW II.

A conviction absent proof beyond a reasonable doubt of every element of the offense charged deprives a defendant of his constitutional right to due process of law (Docket No. 6-1, p. 170 of 231).

### PROPOSITION OF LAW III.

The State committed prosecutorial misconduct by improper comments during closing argument denying Petitioner his constitutional right to a fair trial (Docket No. 6-1, p. 173 of 231).

In an entry filed on August 24, 2013, Chief Justice Maureen O'Connor declined to accept jurisdiction of the appeal pursuant to S.CT.PRAC.R. 7.08(B)(4)[2].

### D.      *Petition for Writ of Habeas Corpus.*

Petitioner was in the custody of Respondent at the Mansfield Correctional Institution when he filed a Petition under 28 U. S.C. § 2254 for Writ of Habeas Corpus in the United States District Court for Northern District of Ohio, Eastern Division, on March 27, 2014.   Three claims were presented:

> *Ground One*:  A conviction absent proof beyond a reasonable doubt of every element of the offense charged deprives a defendant of his constitutional right to due process of law.  Fifth and Fourteenth Amendments to the United States Constitution.
> *Ground Two*:  The trial court erred and abused its discretion by denying Petitioner's motion to suppress identification testimony and by admitting photo spreads violating Petitioner's Constitutional rights to fair trial.

---

[2]

In relevant part, SUPREME COURT PRACTICE RULES 7.08(B)(4) requires that upon review of the jurisdictional memoranda, the Supreme Court will decline to accept the appeal upon determining that the appeal does not involve a substantial constitutional question and should be dismissed.

*Ground Three*:  The State committed prosecutorial misconduct by making improper comments during closing argument, therefore denying Petitioner his constitutional right to a fair trial.

(Docket No. 1).

### III. PROCEDURAL REQUIREMENTS.

The Magistrate finds that Petitioner met the prerequisites to obtaining habeas review.  He (1) filed his Petition for Writ of Habeas Corpus in a timely fashion; (2) exhausted the remedies available to him in state court; and (3) did not waive or forfeit the right to present the foregoing three stated issues by failing to follow state court rules.

### 1. STATUTE OF LIMITATIONS.

The ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT (AEDPA) is an act of Congress signed into law on April 24, 1996.  Under AEDPA, a state prisoner is required to file a habeas petition within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  *Rashad v. Lafler,* 675 F.3d 564, 567 (6$^{th}$Cir. 2012).  A judgment in a criminal case typically becomes final after direct review by the state courts and the United States Supreme Court or at the end of the time for seeking such review.  *Id.* (*See Jimenez v. Quarterman*, 129 S.Ct. 681, 685 (2009)).  The Sixth Circuit has established that the one year statute of limitations does not begin to run until the time for filing a petition for a writ of *certiorari* for direct review in the United States Supreme Court has expired.  *Robertson v. Simpson,* 624 F.3d 781, 782 (6$^{th}$Cir. 2010) (*see Lawrence v. Florida*, 127 S.Ct. 1079, 1083 (2007) (holding that "direct review" under section 2241(d)(1)(A) includes review by the U.S. Supreme Court)).

In this case, Petitioner pursued his direct appeal to the state court of last resort and the

-7-

conviction became final when the Supreme Court of Ohio declined to accept jurisdiction of the appeal on April 24, 2013. The statute began running 90 days later on July 24, 2013, the date when the time to seek review by *certiorari* in the United States Supreme Court expired. The deadline for seeking federal habeas review expired one year later, roughly on July 24, 2014. Petitioner filed the instant Petition on March 27, 2014, thereby establishing that the instant habeas Petition was timely filed.

### 2. EXHAUSTION

In habeas, state court remedies are described as having been exhausted when they are no longer available. *Starks v. Sheldon,* 2013 WL 3992592, *31 (N.D.Ohio,2013) (*citing* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 109 S.Ct. 1056, 1059 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir.1991)). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Id.* (*citing Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994)).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Id.* (*citing Anderson v. Harless*, 109 S.Ct. 890 (1982); *Picard v. Connor*, 92 S.Ct. 509 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir.1989)). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Id.* (*citing Picard*, 92 S.Ct. at 512; *see also Harris v. Reeves*, 794 F.2d 1168, 1174 (6th Cir.1986)). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Id.* (*citing Manning v. Alexander*, 912 F.2d 878, 881–883 (6th Cir.1990)).

In the instant case, Petitioner's first claim is a mix of manifest weight of the evidence and sufficiency arguments. In his direct appeal and memorandum in support of jurisdiction, Petitioner

-8-

argued that his conviction was absent proof beyond a reasonable doubt of every element of the offense charged, thereby depriving him of the constitutional guarantees of due process of law.  This claim in its purest form alleges a lack of manifest weight while supporting a reference to the constitutional provision requiring that convictions be supported by sufficient evidence.  In habeas review, the Magistrate must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt and whether the weight of the evidence was sufficient, competent and credible to the extent that it permitted reasonable minds to find guilt beyond a reasonable doubt.

Petitioner's second habeas claim warrants consideration on the merits since the substance of Petitioner's second habeas claim–the trial court erred by denying appellant's motion to suppress identification testimony and by admitting photo spreads violating appellant's constitutional rights to a fair trial–is a consolidation of the assignments of error I and II posed in the direct appeal.  Petitioner presented the identical claim to the Supreme Court of Ohio in the memorandum in support of jurisdiction.

In his direct appeal, Petitioner argued in the sixth assignment of error that the State committed prosecutorial misconduct by improper comments made during closing argument.  He presented the identical issue in the memorandum in support of jurisdiction filed in the Supreme Court of Ohio, thereby preserving a right to habeas review.  Petitioner's third habeas claim will be considered on the merits.

## IV.  HABEAS REVIEW STANDARD.

The Supreme Court has made clear that Section 2254(d), as amended by AEDPA, is a purposefully demanding standard.  *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) *cert. denied,* 132 S.Ct. 2376 (2012) (*See Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) ("If [§

-9-

2254(d)] is difficult to meet, that is because it was meant to be.")).  Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems and it does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted)).  For that reason, a federal court shall not grant a habeas petition with respect to any claim that was adjudicated on the merits unless the adjudication resulted in a decision that:

> (1)   was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Id.* (*citing* 28 U.S.C. § 2254(d)).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court of the United States on a set of materially indistinguishable facts. *Id.* (*citing Williams v. Taylor*, 120 S.Ct. 1495, 1523 (2000)).

Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court's application of clearly established federal law to the facts of the prisoner's case was objectively unreasonable. *Id.* (*citing Williams, supra*, at 1521).  In construing the meaning of "unreasonable application" in § 2254(d)(1), the Court has emphasized that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 676-677 (*citing Williams*, *supra*, at 1521-1522; *accord Harrington*, *supra*, 131 S.Ct. at 785; *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)).  The reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under de novo review" and that "even a strong

case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Harrington*, 131 S.Ct. at 786; *Renico*, 130 S.Ct. at 1862 (stating that Section 2254(d)(1) "creates 'a substantially higher threshold' for obtaining relief than de novo review") (*quoting Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007))).

To obtain relief, the state criminal defendant "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (*citing Harrington*, 131 S.Ct. at 786–787). This "highly deferential standard for evaluating state-court rulings . . . demands that state-court decisions be given the benefit of the doubt." *Id.* (*citing Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011) (internal citation and quotation marks omitted)).

## V. ANALYSIS

### A CONVICTION ABSENT PROOF BEYOND A REASONABLE DOUBT OF EVERY ELEMENT OF THE OFFENSE CHARGED DEPRIVES A DEFENDANT OF THE CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

Petitioner did not file a Traverse, thus challenging the facts or conclusions adduced by Respondent. The Magistrate therefore liberally construes the arguments made in Petitioner's appellate brief regarding shortcomings in the forensic evidence and inherent unreliability of the witness testimony, as a claim based on sufficiency of the evidence.

#### LEGAL FRAMEWORK FOR SUFFICIENCY OF THE EVIDENCE REVIEW.

A conviction is supported by sufficient evidence if, any rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime as defined by state law beyond a reasonable doubt. *Lanier v. Sheldon*, 2013 WL 5531372, *15 (N.D.Ohio 2013) (*citing Pinchon v. Myers*, 615 F.3d 631, 643–644 (6th Cir.2010) *cert.*

*denied*, 131 S.Ct. 2151 (2011) (*citing Jackson v. Virginia*, 99 S.Ct. 2781, 2789 (1979) (emphasis in original)).  In a habeas proceeding, the court will not simply conduct a *de novo* review of the state court's application of that rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of AEDPA.  *Id.* (*citing Pinchon*, 615 F.3d at 643-644; *see Getsy v. Mitchell*, 495 F.3d 295, 315–316 (6th Cir.2007) (en banc) *cert. denied*, 128 S.Ct. 1475 (2008) ("Whether [the petitioner] is entitled to habeas relief ultimately depends on whether the [state court]'s denial was based on an unreasonable application of clearly established federal law regarding the sufficiency of the evidence.")).  In effect, the court must determine whether it was objectively unreasonable for the state court to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that the petitioner committed the essential elements of the crimes charged beyond a reasonable doubt.  *Id.* (*citing Pinchon*, 615 F.3d at 643-644; *see Nash v. Eberlin*, 258 Fed.Appx. 761, 765 (6th Cir.2007) (unpublished)).

When addressing the sufficiency of the evidence questions, the court must not weigh the evidence, consider the credibility of the witnesses or substitute his or her own judgment for that of the jury.  *United States v. Hilliard,* 11 F.3d 618, 620 (6thCir. 1993) (*citing United States v. Evans,* 883 F.2d 496, 501 (6th Cir. 1989).  Instead, the court must look only to whether after reviewing "the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Id.* (*citing United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir.1992) (*citing Jackson v. Virginia*, 99 S.Ct. 2781, 2789 (1979)).  Indeed, even "circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not 'remove every reasonable hypothesis except that of guilt.' " *Id.* (*citing United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir.1989) (*quoting United States v. Stone*, 748 F.2d 361, 363 (6th Cir.1984)).

### FORENSIC TESTING.

Having reviewed the record in this matter, the Magistrate finds that Petitioner is correct:  the latent print examiner did not find latent prints that belonged to Petitioner on the cellular telephone found at the crime scene (Docket No. 7-2, pp. 312-314 of 429).  However, Petitioner overlooks the full extent of forensic and scientific testing that was conducted in this case.  An experienced DNA analyst for the Cuyahoga County Regional Forensic Laboratory discovered trace evidence belonging to the Petitioner on the victim's blue jeans (Docket No. 7-2, pp. 152-153 of 429).  This evidence establishes with certainty that Petitioner was in contact with the victim.

### CREDIBILITY OF THE WITNESSES.

Petitioner attacks the testimony of witnesses based on their history of conviction and prior bad acts.  The dispositive question is whether the state court's application of Supreme Court precedent in this regard was objectively unreasonable.

The Magistrate acknowledges that the credibility of the witnesses in the underlying case lies beyond the scope of federal habeas review of sufficiency of evidence claims.  Therefore, the Magistrate has not reweighed the evidence or redetermined credibility of witnesses who testified in the underlying criminal trial, made a subjective determination of guilt or innocence or substituted an opinion for that of the trier of fact that convicted Petitioner.  Rather, in assessing the adduced proof, the Magistrate has applied with explicit reference, the substantive elements of the criminal offenses as defined by state law.

OHIO REV. CODE § 2903.01(B), which governs aggravated murder, states in relevant part, that no person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit aggravated robbery.  The aggravated robbery statutes, specifically, OHIO REV. CODE § 2911.01(A)(3), makes it unlawful for a

-13-

person to attempt or commit a theft offense or flee immediately after the attempt or offense while using or brandishing a deadly weapon.  Finally, the kidnaping statute, described under OHIO REV. CODE § 2905, provides that no person by force, threat or deception, shall remove a person from the place where the other person was found or restrain the liberty of the other person. . . . to facilitate the commission of a felony or flight thereafter.

The Magistrate has identified minor differences in the testimony of Ms. Caldwell, Mr. Morris and Mr. Shields which in effect, challenge the quality of the State's evidence, not its sufficiency.  These inconsistencies can easily be explained as the result of faulty recollections, differences of opinions or common reactions after trauma.  The differences in the testimony, however, do not have the earmark of unreliability.  The common thread in all of the eyewitness accounts is that Petitioner was a participant in the kidnaping, robbery and shooting death of the victim.  On April 6, 2010, in front of an apartment building located at 10322 East 105th Street in Cleveland, Ohio, Mr. Shields and Ms. Caldwell were sitting on the stoop of the victim's apartment complex when the victim's friend, Mr. Morris drove up and joined them on the stoop.  All three witnesses watched as Petitioner and an accomplice approached them on the stoop, brandishing a black automatic handgun.  All three witnesses observed Petitioner's behavior leading up to the shooting and placed Petitioner and his accomplice in the same temporal proximity to the victim at the time of his death.  Ms. Caldwell and Mr. Morris watched Petitioner restrain the victim's liberty with the use of a firearm while his accomplice harassed and robbed Mr. Morris (Docket No. 7-4, pp. 298, 308-310, 314, 319-321, 339, 355-358, 391-396 of 458).  The characterization of Petitioner's behavior leading up to the time when witnesses saw him shoot the victim when viewed most favorably to the prosecution, would satisfy a reasonable trier of fact that the essential elements of aggravated murder, aggravated robbery and kidnaping existed beyond a reasonable doubt.

-14-

Petitioner suggests that there are credibility issues with the witnesses.  There is nothing in the record that is disparaging about Ms. Caldwell, a nurse's assistant or Mr. Shields, a five-year employee at a restaurant franchise.  Neither had a history of criminal activity (Docket No. 7-4, pp. 298, 402-403 of 458).  On the other hand, Mr. Morris admitted on direct examination that he was a convicted felon and that he was "on the run from a half-way house" (Docket No. 74, pp. 360-361 of 458).  Trial counsel had every opportunity to challenge Mr. Morris' credibility through cross-examination, confronting him about his criminal history, status as a parolee and any particular facts tending to show interest or bias.  The jury considered Mr. Morris' convictions and prior behavior in making an assessment of his credibility.  The testimony of Mr. Morris when considered as a whole with the testimony of Ms. Caldwell and Mr. Shields, appears credible.

### CONCLUSION.

Even if the record lacks forensic evidence and Mr. Morris's testimony is discounted because he is a convicted felon, a rational trier of fact could find more than circumstantial evidence sufficient to sustain the substantive elements that link Petitioner to the shooting, robbery and kidnaping by witnesses Ms. Caldwell and Mr. Shields.  Petitioner's conviction is insulated from attack on the basis that it did not comport with due process.

**PETITIONER ARGUES THAT THE TRIAL COURT ERRED BY DENYING HIS MOTION TO SUPPRESS IDENTIFICATION TESTIMONY AND BY ADMITTING PHOTO SPREADS IN THE UNDERLYING TRIAL, THEREBY VIOLATING HIS RIGHT TO A FAIR TRIAL.**

Petitioner claims that his due process rights were violated when the trial court denied the motion to suppress his pre-trial identification.  According to Petitioner, the photographic array consisted of six photos.  *Ryan,* 2012 WL 6082901, at *4.  The suspect in photo number 6 displayed his teeth, showing no missing left, front tooth; the suspect in photo number 5 did not have a mustache; the suspect in photo number 4 had no hair on his chin and had visible tattoos on his neck

-15-

and face; the suspect in photo number 2 had no facial hair whatsoever; and the lighting on his photo number 1, makes it appear that he had darker skin. *Id.* Petitioner concludes that the array was unnecessarily suggestive because his picture was prominent in the display both by its placement in the array and the diverse descriptions of the other suspects.

## THE LAW

The Supreme Court has held that an identification violates a defendant's right to due process where the identification procedure was so unnecessarily suggestive as to run the risk of irreparable mistaken identification. *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005) *cert. denied,* 126 S. Ct. 1032 (2006) (*citing Stovall v. Denno*, 87 S.Ct. 1967, 1972 (1967); *Neil v. Biggers*, 93 S.Ct. 375 (1972); *see also Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir.1986) *cert. denied*, 107 S. Ct. 3196 (1987)). "It is the likelihood of misidentification which violates a defendant's right to due process." *Id.* (*citing Neil*, 93 S.Ct. at 381-382).

The fact finder must assess whether the identification was unnecessarily suggestive, then assess whether the identification was nonetheless reliable. *Id.* Reliability is the linchpin in determining whether the identification testimony is admissible. *Id.* (*citing Manson v. Braithwaite*, 97 S.Ct. 2243, 2253 (1977)). If an identification is reliable, it will be admissible even if the confrontation was suggestive. *Id.* (*citing Carter v. Bell*, 218 F.3d 581, 605 (6th Cir.2000)).

The petitioner bears the burden of showing impermissible suggestiveness. *Id.* (*citing United States v. Hill*, 967 F.2d 226, 230 (6th Cir.1992) *cert. denied,* 113 S. Ct. 438 (1992)). Unnecessary suggestiveness generally depends "upon whether the witness's attention was directed to a suspect because of police conduct." *Id.* (*citing* 2-5 CRIM. CON. LAW § 5.05(2)(b) (2004)). In considering this, the fact finder must look to the effects of the circumstances of the pretrial identification, not whether law enforcement officers intended to prejudice the defendant. *Id.* (*citing Thigpen, supra*,

-16-

804 F.2d at 895).  In examining whether the identification procedure was impermissibly suggestive, the "primary evil to be avoided is a very substantial likelihood of irreparable misidentification."  *Id.* (*citing Neil*, 93 S.Ct. at 381-382; *citing Simmons v. United States*, 88 S.Ct. 967, 971 (1968)).

### THE RESOLUTION.

The Magistrate acknowledges that identification procedures are suggestive to some extent and that inherent in presenting the photographic array is an assumption that the "guilty party" is included in the photographic array.  However, Petitioner failed to present anything more than an argument in an attempt to persuade the Court that (1) placing him as suspect number one in the photographic array was so prominent as to be unduly suggestive; (2) the eyewitness identification was so suggestive as to give rise to substantial likelihood of irreparable misidentification; and (3) the circumstances of the case make the identification inadmissible.

Ms. Caldwell, Mr. Shields and Mr. Morris placed Petitioner at the crime scene as the shooter, each identifying him by his tooth loss.  The Magistrate is not persuaded that suppression of the subsequent identification was warranted because Petitioner was distinguishable on the basis of one physical characteristic identified during pretrial identification.  Instead, the Magistrate is persuaded by the witnesses' familiarity with Petitioner so as to render their identifications independently reliable.  Ms Caldwell and Mr. Shields were both highly attentive to Petitioner and his behavior before, during and after the murder and Mr. Morris suggested that he made eye contact with Petitioner for at least two minutes when he was leaving the scene of the crime.  Ms. Caldwell's unrefuted testimony was that on the day following the murder, she was able to identify Petitioner immediately upon viewing a six-photograph array, without communication or suggestion from the police officer (Docket No. 7-4, pp. 316-321 of 458).  Two days after the murder, Mr. Morris was able to identify Petitioner by his dental work as one of the duo responsible for the slaying and

robbery.  His unrefuted account of the identification procedure was that the police did not suggest that Petitioner was in the array (Docket No. 7-4, pp. 360, 373-374 of 458).  Approximately one month after the crimes, Mr. Shields, without hesitation or suggestion, identified Petitioner immediately as the shooter.  His unrefuted testimony was that Petitioner's photograph was never singled out and he was not advised that Petitioner was in the photographic array (Docket No. 7-4, pp. 393, 399-402, 419 of 458).

Even if the pretrial identification procedure was unduly suggestive, which the Magistrate cannot find without viewing the photographic array, the subsequent in-court identification was consistent among the witnesses with their prior description.  Importantly, Ms. Caldwell, Mr. Shields and Mr. Morris were unwavering in their identification during confrontation by defense counsel.  Overall these witnesses demonstrated a level of certainty that resulted from a chance to view Petitioner during the commission of the crime and observe him independently at trial.

Finally, the Magistrate is persuaded that the identification procedure did not taint the outcome of the trial.  Petitioner sought pretrial suppression of his identification, however, upon review of the transcript from his third trial, identification of Petitioner as the perpetrator was not a contested issue.  The Magistrate concludes that the identification procedure did not violate Petitioner's right to due process and that the trial court's application of Supreme Court precedent in denying the motion to suppress did not constitute an unreasonable application of federal law.


**PETITIONER CONTENDS THAT THE STATE COMMITTED PROSECUTORIAL MISCONDUCT BY MAKING IMPROPER COMMENTS DURING CLOSING ARGUMENT, THEREBY DENYING PETITIONER HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.**

At no point in his pleadings does Petitioner provide the Court with the proposed facts that he contends constitute prosecutorial misconduct or elucidate what error the state court made in

-18-

interpreting or applying the law.  Petitioner failed to file a Traverse which identifies the improper comments that the prosecutor made during closing.  Therefore the Magistrate liberally construes the allegations in his appellate brief as claims for which he seeks habeas relief:

1. The prosecutor stated that the description of the shooter was provided to police on the night of the shooting.
2. The prosecutor commented on Ms. Caldwell's testimony describing his tattoo.
3. The prosecutor vouched for witnesses.

### THE LAW.

Prosecutorial misconduct in closing arguments is assessed by asking whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. *State v. Tibbetts*, 92 Ohio St. 3d 146, 168, 749 N.E.2d 226, 254-255 (2001) (*citing State v. Hessler*, 90 Ohio St.3d 108, 125, 734 N.E.2d 1237, 1254 (2000) (*quoting State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883, 885 (1984)).  While a prosecutor may not make excessively emotional arguments tending to inflame the jury's sensibilities, the prosecutor is entitled to some latitude in making a closing argument to the jury.  *Id.*  Realism compels us to recognize that criminal trials cannot be squeezed dry of all feeling.  *Id.* (*citing State v. Keenan*, 66 Ohio St.3d 402, 409, 613 N.E.2d 203, 209 (1993)).  The Court affords wide latitude to a prosecutor during closing argument, analyzing disputed comments in the context of the trial as a whole and recognizing that inappropriate comments alone do not justify reversal where the proceedings were otherwise fair. *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008) (*citing United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *see also United States v. Hitow*, 889 F.2d 1573, 1579 (6th Cir.1989)).

**THE RESOLUTION**.

Having independently reviewed the prosecutor's closing argument from Petitioner's third trial, the Magistrate finds that the prosecutor did misstate that the police officer received the description of the shooter on the night of the shooting when they actually received such description the day after the shooting.  Even if the statement was inaccurate, it was neither inflammatory nor prejudicial to Petitioner's substantial rights.  The Magistrate is unable to find that this misstep somehow infected the trial with unfairness so as to make the resulting conviction a denial of due process.

With respect to the second assertion that the prosecutor referred to Ms. Caldwell's testimony that the shooter had a tattoo on his arm, a prosecutor may comment upon the witnesses's opportunity to review the facts and their level of awareness of what is going on.  The prosecutor's observation did not exceed that latitude afforded the prosecutor in making a closing argument.

Turning to the third claim that the prosecutor somehow "vouched" for the witnesses, a prosecutor may not impermissibly express his or her opinion regarding the credibility of the witnesses.  *State v. Jeffery*, 2013-Ohio-504, 986 N.E.2d 1093, 1099 (2013).  During closing, prosecutors can bolster their own witnesses and conclude by saying, in effect, that the evidence supports the conclusion that these witnesses are telling the truth.  *Id.*

Here, the prosecutor provided a synopsis of each witnesses' testimony, including their interest in the case, their demeanor at the time of the shooting, their peculiar opportunity to review the shooting and their level of awareness as to what was going on.  He concluded that the circumstances made the witnesses more believable and deserving of more weight.  He never gave his personal opinion so as to place his own personal credibility at issue.  The Magistrate is unable to

find that the prosecutor did more than bolster his own witnesses and conclude by saying, in effect, that the evidence supported the conclusion that these witnesses were telling the truth (Docket No. 7-5, pp. 261-267 of 358).

## VII. CONCLUSION

For these reasons, the Magistrate recommends the Court deny the Petition for Writ of Habeas Corpus and terminate the referral to the undersigned Magistrate Judge.

<u>/s/Vernelis K. Armstrong</u>
United States Magistrate Judge

Date:  December 22, 2014

-21-

## VIII. NOTICE.

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6ᵗʰ Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.